

1    CHARLES F. PREUSS (State Bar No. 45783)
     BRENDA N. BUONAIUTO (State Bar No. 173919)
2    MATTHEW P. SMITH (State Bar No. 247957)
     DRINKER BIDDLE & REATH LLP
3    50 Fremont Street, 20th Floor
     San Francisco, California 94105
4    Telephone: (415) 591-7500
     Facsimile: (415) 591-7510
5
     Attorneys for Defendants
6    ORTHO-MCNEIL PHARMACEUTICAL, INC.
     and MCKESSON CORPORATION
7

                    UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA          **BZ**

                    SAN FRANCISCO DIVISION

CHOLE ALLEN, an individual; LISA          Case No. **07  3980**
ANDERSON, an individual; LAUREN
ANDREAS, an individual; BRANDI
BAILEY, an individual; COENEKA BALL,
an individual; MONTOYA BALL, an           **NOTICE OF REMOVAL AND REMOVAL**
individual; TIESHIA BAMSEY, an            **OF ACTION UNDER 28 U.S.C. § 1441(B)**
individual; TERTULIETTE BELIARD, an       **[DIVERSITY]**
individual; TAMELA BLACKMAN, an
individual; DELORES BONNER, an
individual; JASMINE BOX, a minor, by
and through her guardian ad litem
SCHARLETTA BOX; LACI BRIGNAC,
an individual; JERHONDA BROWN, an
individual; DAMITA BYNUM, an
individual; QUIEONNA CARPENTER, an
individual; ERIKA CARR, an individual;
WENDY CARRIGAN, an individual; M.
CHARLOTTE CHEATHAM, an
individual; SHERIE COLLINS, an
individual; KERRI COOPER, an individual;
TERRY COREAU, an individual;
MARANDA CRUMEDY, an individual;
CENNIE DARBY, an individual; JOEY
DAVIS, an individual; SUSAN DOMAN,
an individual; ALCOLA EDWARDS, an
individual; SARAH EVANS, an individual;
TRYSHA GRAVES, an individual;
ALEJANDRINA GARZA, an individual;
GERALDINE GILLIGAN, an individual;
RHONDA GRANJA, an individual;
STACY GREENWOOD, an individual;
REBECCA GRICE, an individual; SARAH
GRIFFITH, an individual; DOROTHY
GURERRIER, an individual; TAMIERA
HARRIS, an individual; MICHELE

| | |
|---|---|
| 1 | HELKENN, an individual; NADIA |
| | HERNANDEZ, an individual; COURTNEY |
| 2 | HEWETT, a minor by and through her |
| | guardian ad litem, ANNETTE HEWETT; |
| 3 | ROCKENIA HUDSON, an individual; |
| | JENNIFER JACKSON, an individual; |
| 4 | CLARICE JENKINS, an individual; |
| | KRYSTAL JENNINGS, an individual; |
| 5 | TIFFANY JENSEN (PENKE) , an |
| | individual; CANDIS JOHNSON, an |
| 6 | individual; DOMONIQUE JOHNSON, an |
| | individual; JANNOEL JOHNSON, an |
| 7 | individual; MICHELLE JOHNSON, an |
| | individual; NICOLE JOHNSON, an |
| 8 | individual; TAMMY JONES, an individual; |
| | TIARA JOYNER, an individual; |
| 9 | AMANDA KING, an individual; YANA |
| | KRISHTAL, an individual; VALERIE |
| 10 | LANE, a minor by and through her guardian |
| | ad litem, VIVIAN LANE; DANA LEWIS, |
| 11 | an individual; MARY LEWIS, an |
| | individual; DARCI LIDSTER, an |
| 12 | individual; MICHELLE LOCKET, an |
| | individual; DENISE LUCERO, an |
| 13 | individual; VIRGINIA MANGANO, an |
| | individual; TRACI MARGIIOTTA, an |
| 14 | individual; LENIKA MCNAIR, an |
| | individual; JUDY MICKENS, an |
| 15 | individual; ARIES MITCHELL, an |
| | individual; TOSHEA MORGAN, an |
| 16 | individual; STAPHANIE MULLINGS, an |
| | individual; TYREE NEAL, an individual; |
| 17 | JULIANA PAIZ, an individual; ERINA |
| | PARKER, an individual; ERIKA PENA, an |
| 18 | individual; JENNIFER PROCH, an |
| | individual; TRACY RILES, an individual; |
| 19 | URSHALA RIVERS, an individual; |
| | MARGARET ROGERS, an individual; |
| 20 | TAMANISHA RUBIN, an individual; |
| | CARRIE RYAN, an individual; IESHIA |
| 21 | SCOTT, an individual; REBECCA |
| | SHERRY, an individual; TONYA SIMMS, |
| 22 | an individual; JESSICA SMITH, an |
| | individual; LINDA TANNER, an |
| 23 | individual; CLEO THOMPSON, an |
| | individual; CRYSTAL WALDO, an |
| 24 | individual; KRISTEN WALKER, an |
| | individual; TIFFANY WALKER, an |
| 25 | individual; NIKKIA MARTIN, a minor by |
| | and through her guardian ad litem, LAURA |
| 26 | WASHINGTON; JOYCE WATERS, an |
| | individual; CRYSTAL WEAVER, an |
| 27 | individual; DAWN WHITE, an individual; |
| | MARIE WILLIAMS, an individual; |
| 28 | SHERITA WILLIAMS, an individual; |

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

2

1  ROBBIN WINTERS, an individual;
   CATHY WOOD, an individual; ROMONA
2  WRIGHT, an individual,

3             Plaintiff,

4       v.

5  ORTHO-MCNEIL PHARMACEUTICAL,
   INC., a Delaware Corporation;
6  MCKESSON CORP and DOES 1-500,
   inclusive,
7
              Defendants.
8

9

10  **TO THE CLERK OF THE COURT:**

11       Defendant Ortho-McNeil Pharmaceutical, Inc. ("OMP") removes to this Court the

12  state court action described below, based on diversity of citizenship, pursuant to 28

13  U.S.C. §1332. As detailed here, the Court should disregard the citizenship of defendant

14  McKesson Corporation ("McKesson") and of plaintiff Damita Bynum (the "New Jersey

15  plaintiff") because plaintiffs fraudulently joined those parties. In the alternative, the

16  Court should sever plaintiffs' fraudulently joined claims and exercise diversity

17  jurisdiction over all but the New Jersey plaintiff's claims.

18                              **BACKGROUND**

19       1.       On May 4, 2007, the Southern California law firms of Law Offices of

20  Shawn Kohrrami and Kabateck Brown Kellner LLP filed a personal injury action in the

21  Superior Court of California, County of San Francisco, entitled *Chole Allen, et al. v.*

22  *Ortho-McNeil Pharmaceutical, Inc., a Delaware Corporation; McKesson Corp. and*

23  *Does 1-500, inclusive*, Case Number CGC-07-461636. A copy of the First Amended

24  Complaint in that San Francisco County state court action (the "FAC") is attached as

25  Exhibit A to the accompanying Declaration of Brenda N. Buonaiuto ("Buonaiuto Dec.").

26       The 95 individual plaintiffs in the action include residents of 30 states, who seek

27  damages for "serious" personal injuries they allegedly suffered from using the Ortho

28  Evra® contraceptive patch, available only by prescription and manufactured by OMP.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

3

1   (FAC ¶¶ 1-2, 10-104.)  Only ten of the 95 plaintiffs reside in California, and none reside

2   in San Francisco County.  (FAC ¶¶ 10-104.)  Plaintiffs' claims have nothing in common,

3   other than that they all allege to have used Ortho Evra®.  (*See* FAC.)  Plaintiffs allege

4   causes of action for Negligence, Strict Liability Failure to Warn, Breach of Express

5   Warranty, Breach of Implied Warranty, Negligent Misrepresentation, and Fraud against

6   OMP, a Delaware corporation with its principal place of business in New Jersey.  (FAC ¶

7   105; Buonaiuto Dec. ¶ 3.)  Although devoid of any factual allegations against McKesson,

8   plaintiffs' First Amended Complaint asserts those same claims against McKesson, a

9   Delaware corporation with its principal place of business in San Francisco, California,

10   whom plaintiffs allege "distributed and sold Ortho Evra in and throughout the State of

11   California."  (FAC ¶¶ 3, 110; Declaration of Greg Yonko, filed in *Abel, Theresa, et al. v.*

12   *Ortho-McNeil Pharmaceutical, Inc., et al.*, USDC ND CA Case No. C 06 7551 SBA

13   ("Yonko Dec."), attached to the Buonaiuto Dec. as Exhibit B, ¶ 2.)

## BASIS FOR JURISDICTION

15   2.      Basis for Jurisdiction in this Court.  This Court has original jurisdiction

16   over this action, and OMP may properly remove to this Court, because the amount in

17   controversy exceeds \$75,000, exclusive of interest and costs, and there is diversity of

18   citizenship of all named parties not fraudulently joined.  28 U.S.C. §§ 1332, 1441(a).

19            a.      Amount in Controversy.  Pursuant to California Code of Civil

20   Procedure Section 425.10(b), the amount of damages sought by plaintiffs is not stated in

21   the FAC.  However, the 95 plaintiffs claim that they have *each* "suffered and/or may

22   continue to suffer potentially fatal side effects such as strokes, pulmonary emboli, blood

23   clots, deep vein thrombosis, and heart attacks" from using Ortho Evra®.  (FAC ¶ 1; *see*

24   *also* ¶ 133, alleging that plaintiffs have suffered "strokes, pulmonary emboli, blood clots,

25   deep vein thrombosis, and heart attacks, as well as other severe permanent health

26   problems.")  Plaintiffs further allege that OMP engaged in "fraudulent" and "reckless"

27   conduct, giving rise to punitive damages claims.  (*See e.g.* FAC ¶¶ 131, 142, 144, 157-

28   159, 169, 184, 190, 195-198.)

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

4

SF1\387412\1                    NOTICE OF REMOVAL AND REMOVAL                                    CASE NO.

1    Given the nature of plaintiffs' claims, and a review of damages awards and
2    settlement amounts in this judicial district, in cases involving allegations of serious
3    injuries from the use of prescription drugs or medical devices, it is reasonably believed
4    that, if plaintiffs succeeded in proving the allegations of the FAC, they would each
5    recover a minimum of $75,000 in damages. (Buonaiuto Dec. ¶ 11.) Indeed, plaintiffs
6    claiming substantially similar injuries in the Ortho Evra® MDL have specifically alleged
7    that the amount in controversy in their respective actions exceeds $75,000, exclusive of
8    interest and costs. (*Id*.)

9    It is therefore "facially apparent" from the nature of the claims alleged and the
10   types of damages sought that the amount in controversy as to each plaintiff in this action
11   exceeds $75,000, exclusive of interest and costs. *See White v. FCI USA, Inc.*, 319 F.3d
12   672, 674 (5th Cir. 2003) (it was "facially apparent" that claim exceeded $75,000 based on
13   plaintiff's "lengthy list of compensatory and punitive damages"); *see also In re Rezulin*
14   *Products Liability Litigation*, 133 F.Supp.2d 272, 296 (S.D.N.Y. 2001) (concluding that
15   complaint "obviously asserts a claim exceeding $75,000" where plaintiff seeks
16   "compensatory and punitive damages" for alleged "serious and life-threatening medical
17   conditions" due to use of prescription medicine); *International Padi, Inc. v. Diverlink*,
18   2005 WL 1635347, *1 (9th Cir. Cal. 2005) (court considered plaintiffs' general
19   allegations of unspecified general and special damages "reasonably believed to be in
20   excess of the jurisdictional limits" of the trial court and their request for injunctive relief
21   to "easily conclude" that the $75,000 amount in controversy requirement was met).

22               b.      Citizenship of the Parties. There is complete diversity of citizenship
23   between those parties not fraudulently joined. As alleged in the FAC, plaintiffs (other
24   than the fraudulently joined New Jersey plaintiff), are citizens variously of Alabama,
25   Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Iowa,
26   Louisiana, Kentucky, Maryland, Michigan, Mississippi, Missouri, New Mexico, New
27   York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas,
28   Utah, Virginia, Washington, Wisconsin. (FAC ¶¶ 10-104.) At the time the state court

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

5

SF1\387412\1          NOTICE OF REMOVAL AND REMOVAL                                                    CASE NO.

1   action was filed and at the time of this removal, OMP was and is a corporation existing

2   under the laws of the State of Delaware, with its principal place of business in New

3   Jersey. (Buonaiuto Dec. ¶ 3.) Therefore, diversity of citizenship exists between plaintiffs

4   and OMP, pursuant to 28 U.S.C. Section 1332.

5       c.   All Non-Diverse Parties have been Fraudulently Joined.

6   1.   Plaintiffs Fraudulently Joined McKesson. The only other named defendant

7   in this action, McKesson, is a Delaware corporation with its principal place of business in

8   San Francisco, California. (Yonko Dec. ¶ 2.) McKesson has no potential liability to

9   plaintiffs or to any of them. Rather, plaintiffs named McKesson as a "sham" defendant in

10  an effort to destroy diversity and to prevent this case from being removed to federal court

11  and then transferred to the Ortho Evra® MDL, which is pending in the Northern District

12  of Ohio. (Buonaiuto Dec. ¶ 6.)

13      A defendant is fraudulently joined if "the plaintiff fails to state a cause of action

14  against the defendant, and the failure is obvious according to the settled rules of the

15  state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (where non-

16  diverse defendant is fraudulently joined, there is an exception to the requirement of

17  complete diversity); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)

18  ("fraudulently joined defendants will not defeat removal on diversity grounds"). "When

19  determining whether a defendant is fraudulently joined, "[t]he court may pierce the

20  pleadings, consider the entire record, and determine the basis of joinder by any means

21  available.'" *Maffei v. Allstate California Ins. Co.*, 412 F.Supp.2d 1049 (E.D.Cal. 2006),

22  *citing Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D.Cal. 1979) ("it is well settled that upon

23  allegations of fraudulent joinder … federal courts may look beyond the pleadings to

24  determine if the joinder … is a sham or fraudulent device to prevent removal"). If

25  revealed that the joinder is fraudulent, the Court may dismiss the sham defendant.

26  *Maffei, supra*. McKesson is so fraudulently joined here.

27      McKesson is fraudulently joined because plaintiffs have not made any material

28  allegations against it. *See e.g. Brown v. Allstate Insurance*, 17 F.Supp.2d 1134, 1137

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

6

NOTICE OF REMOVAL AND REMOVAL                                      CASE NO.

1    (S.D.Cal. 1998) (finding in-state defendants fraudulently joined where "no material

2    allegations" against those defendants were made). Here, as demonstrated by the FAC,

3    plaintiffs' claims are substantively directed against the manufacturer of Ortho Evra® –

4    OMP, and not at McKesson. Indeed, none of plaintiffs' factual allegations, on which all

5    of their causes of action are based, involve McKesson. (*See* "General Allegations" at

6    FAC ¶¶ 118-133.) Specifically, plaintiffs claim that: OMP obtained FDA approval of

7    Ortho Evra®, despite concerns about its safety; OMP failed to appropriately warn users

8    and prescribing health care providers of the alleged serious risks of using Ortho Evra®;

9    OMP failed to properly or adequately investigate safety concerns about Ortho Evra®;

10   OMP's conduct fell below the duty of care that it allegedly owed to plaintiffs; OMP

11   misrepresented the known risks associated with Ortho Evra®; OMP negligently and

12   recklessly failed to inform the public and prescribing health care providers of the alleged

13   risks of using Ortho Evra®; and OMP was careless and negligent in its manufacturing,

14   testing, selling, distributing, merchandising, advertising, promoting, packaging, and

15   marketing of Ortho Evra®.[1] (*Id.*) Those allegations have everything to do with the

16   claimed acts and omissions of OMP, and nothing to do with McKesson.

17        The only factual allegations that do relate to McKesson fail to state a claim against

18   that defendant. Plaintiffs allege that McKesson "distributed and sold Ortho Evra in and

19   throughout the State of California," and that McKesson "packaged, distributed, supplied,

20   sold, placed into the stream of commerce, labeled, described, marketed, advertised,

21   promoted and purported to warn or to inform users regarding the risks pertaining to, and

22   assuaged concerns about the pharmaceutical Ortho Evra." (FAC ¶¶ 3, 113.) Notably

23   absent is any allegation that the plaintiffs or any of them fall within the general class of

24   "users" referenced by plaintiffs' conclusory allegations. Even more telling, plaintiffs do

25   not allege that McKesson distributed or sold Ortho Evra® to any of the 95 of them – only

26

27        [1] As detailed in its Answer, filed simultaneously with this Removal, OMP denies plaintiffs'
     allegations and denies that it is liable to plaintiffs in any manner or sum whatsoever.

28

1   ten of whom even live in the State of California – or to any of their respective health care
2   providers or pharmacists, much less to all of them. (*See*, FAC.)  Further, the FAC lacks
3   any allegation that McKesson sold or distributed Ortho Evra® outside the State of
4   California, where 85 of the 95 plaintiffs reside. The absence of such allegations compels
5   the conclusion that plaintiffs fraudulently joined McKesson in an attempt to defeat
6   diversity jurisdiction. *See e.g. Lyons v. American Tobacco Co.*, 1997 WL 809677 at *5
7   (S.D. Ala. 1997) (holding that there is "no better admission of fraudulent joinder" than
8   the failure of plaintiff "to set forth any specific factual allegations" against the non-
9   diverse defendant). Plaintiffs cannot cure this deficiency by relying on allegations
10  directed toward "Defendants" generally or toward OMP. *See In re PPA Products
11  Liability Litigation*, MDL No. 1407, Docket No. C02-423R (W.D.Wash. Nov, 27, 2002),
12  Slip Op. at 5 (attached to Ex. C to Buonaiuto Dec.) (allegations directed toward
13  "defendants" or "all defendants" insufficient).

14      In short, plaintiffs fail to allege that they received Ortho Evra® sold or distributed
15  by McKesson, a prerequisite to their product liability claims. It is essential that a plaintiff
16  who claims that a product distributed by defendant was defective must prove that
17  defendant was the distributor. *Garcia v. Joseph Vince Co.*, 84 Cal.App.3d 868, 874
18  (1978) ("Regardless of the theory which liability is predicated upon ... it is obvious that to
19  hold a producer, manufacturer, or seller liable for injury caused by a particular product,
20  there must first be proof that the defendant produced, manufactured, sold, or was in some
21  way responsible for the product"). Notwithstanding, given that the crux of plaintiffs'
22  claims is an alleged failure to warn of the alleged risks of using Ortho Evra®, there is no
23  legal basis for the causes of action asserted against McKesson.

24      Under California law, McKesson bears no duty to warn. Rather, the "learned
25  intermediary doctrine" provides that the duty to warn of a drug's risk runs from the
26  manufacturer to the physician, and then from the physician to the patient. *See Brown v.
27  Superio Court (Abbott Labs.)*, 44 Cal.3d 1049, 1061-62, n.9 (1988); *Carlin v. Superior
28  Court (Upjohn Co.)*, 13 Cal.4[th] 1104, 1116 (1996). The rationale of the learned

1    intermediary doctrine is that the physician is in the best position to determine whether a

2    patient should use a prescription drug, and imposing a duty to warn on others would

3    threaten to undermine reliance on the physician's informed judgment. For this reason,

4    California courts have rejected imposing liability on distributors, including specifically

5    McKesson, for failure to warn of the risks of using a prescription drug. *See e.g. Barlow*

6    *v. Warner-Lambert Co.*, Case No. CV-03-1647-R(RZx), Slip Op. at 2 (C.D.Cal. April 28,

7    2003) (attached as Ex. D to the Buonaiuto Dec.) ("the Court finds that there is no

8    possibility that plaintiffs could prove a cause of action against McKesson, an entity which

9    distributed [the prescription medication at issue] to pharmacists in California;" motion to

10   remand denied); and *Skinner v. Warner-Lambert Co.*, Case No. CV-03-1643-R(RZx),

11   Slip Op. at 2 (C.D.Cal. April 28, 2003) (attached as Ex. E to Buonaiuto Dec.) (same).

12          Further, McKesson had no involvement in the development or preparation of the

13   prescribing information for Ortho Evra® and did not have any responsibility for the

14   content of other written warnings concerning Ortho Evra®. (Yonko Dec. ¶ 5.) At no

15   time has McKesson had any involvement with the manufacture, development, testing,

16   packaging, labeling, advertising, promotion, or marketing of Ortho Evra®. (*Id.* ¶¶ 6-7.)

17          It is therefore a mystery why McKesson is named in this case, other than as a

18   "sham" defendant to destroy diversity jurisdiction and to prevent OMP from removing

19   the action to federal court and then transferring it to the Ortho Evra® MDL. Courts have

20   consistently ruled that such collusive tactics are not to be recognized. *See e.g. Attorneys*

21   *Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593 (9th Cir. 1996) (noting there is

22   no more reason for federal courts to countenance destruction of jurisdiction by the use of

23   straw parties than there is for them to countenance the creation of jurisdiction in that

24   manner). The Court should therefore disregard the citizenship of McKesson in

25   determining whether the requisite diversity exists.

26          2.      Plaintiffs Fraudulently Joined the New Jersey Plaintiff. Once McKesson

27   drops out of the analysis, there is complete diversity, with the exception of the New

28   Jersey plaintiff and OMP. The New Jersey plaintiff lacks any basis to sue OMP, a

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

9

SF1\387412\1

NOTICE OF REMOVAL AND REMOVAL                                                           CASE NO.

1  Delaware corporation with its principal place of business in New Jersey, in a San

2  Francisco, California state court. The New Jersey plaintiff does not allege any

3  connection between her or her injuries and San Francisco, California. (*See* FAC.) The

4  New Jersey plaintiff does not allege that she purchased Ortho Evra® in San Francisco,

5  California or that she saw any health care providers for her injuries here. (*Id.*) Rather,

6  the New Jersey plaintiff resides in New Jersey, her alleged injuries presumably occurred

7  in New Jersey, and her health care providers and any other relevant witnesses and

8  evidence are presumably located in New Jersey. (*Id.* ¶¶ 23.) Her claims against OMP are

9  therefore more appropriately and justly tried in New Jersey. *See* Cal. Civ. Proc. Code §

10  410.30 ("When a court finds that in the interest of substantial justice an action should be

11  heard in a forum outside this state, the court shall ... dismiss the action in whole or in

12  part on any conditions that may be just"). There is simply no basis for the New Jersey

13  plaintiff to proceed against OMP in San Francisco. It is therefore clear that plaintiffs

14  joined the New Jersey plaintiff for the sole purpose of defeating diversity, and the

15  inclusion of the New Jersey plaintiff is simply another "sham" that should also be

16  disregarded.[2]

17  3.    Alternatively, the Court Should Sever All of Plaintiffs' Fraudulently Joined

18  Claims. Alternatively, this Court should sever plaintiffs' unrelated claims into individual

19  actions and take diversity jurisdiction over all of those claims, with the exception of

20  those asserted by the New Jersey plaintiff, so that those actions may then be transferred to

21  the Ortho Evra® MDL. The practice of joining a non-diverse plaintiff to defeat diversity

22  has been described by at least one MDL court as "an innovative, but unwise, pleading

23  strategy that interferes with the court's ability to administrate the case for pretrial

24  purposes." *In re Diet Drugs Products Liability*, 1999 WL 554584 at *5 (E.D.Pa. 1999)

25

26  [2] To the extent the New Jersey plaintiff would argue that she joined this case to "pool resources,"
27  there is coordinated litigation pending against OMP in New Jersey, which she could have joined, *In re Ortho Evra Birth Control Patch Litigation*, Superior Court of New Jersey, Middlesex County, Case No. 275.
28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\3874121\1    NOTICE OF REMOVAL AND REMOVAL    CASE NO.

1 (held that even if non-diverse plaintiff has valid cause of action against defendant, that
2 plaintiff may not prevent removal based on diversity jurisdiction if there is no reasonable
3 basis for joinder with other plaintiffs claims). Indeed, federal "courts have repeatedly
4 held that misjoined plaintiffs will not defeat diversity" and that the remedy is severing the
5 non-diverse claims. *In re Prempro Products Liability Litigation*, 417 F.Supp.2d 1058,
6 1059 (E.D.Ark. 2006). The *Prempro* court identified a host of other situations where the
7 courts severed misjoined plaintiffs under similar circumstances. *See e.g. In re*
8 *Orthopedic Bone Screw Products Liability*, 1995 WL 428683 (E.D.Pa. 1995); *In re*
9 *Rezulin Products Liability Litigation*, 168 F.Supp.2d 136, 145 (S.D.N.Y. 2001); *In re*
10 *Diet Drugs*, *supra,* 1999 WL 554584 at \*4; and *In re Baycol Products Liability*
11 Litigation, 2003 WL 22341303 (D.Minn. 2003).

12 These cases are particularly instructive here. Plaintiffs are residents of 30
13 different states and were therefore presumably prescribed Ortho Evra® by different
14 doctors, used the drug for different lengths of time, and suffered different injuries. The
15 health care providers and other relevant witnesses, all located in counties and states
16 outside San Francisco County, California, would not be compelled to attend trial here.
17 The only thing common among plaintiffs is that they each allegedly used Ortho Evra®.
18 That alone is not enough. *Greene v. Wyeth*, 344 F. Supp.2d 674, 684-85 (D.Nev. 2004)
19 (in 9th Cir.) (held that ingestion of same drug among various plaintiffs not sufficient basis
20 to permit all plaintiffs to join in one action).

21 OMP's "statutory right of removal has been frustrated by plaintiffs' improper
22 joinder, and the interests of judicial expediency and justice weigh in favor of severance."
23 *Wyeth*, *supra*, 344 F.Supp.2d at 685. "Removal based on diversity of citizenship is a
24 right conferred by Congress, the need for which 'may well be greatest when the plaintiff
25 tries hardest to defeat it.'" *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990),
26 *citing* American Law Institute, Study of the Division of Jurisdiction Between State and
27 Federal Courts, Official Draft, at 169 (1969). As such, the Court should alternatively
28 sever plaintiffs' individual claims and should exercise diversity jurisdiction over all but

1   the New Jersey plaintiff's case. OMP can then move the state court to transfer that

2   remaining case to New Jersey state court – the more appropriate and convenient forum.

3   Absent that result, the right of a party to obtain diversity jurisdiction would be "rendered

4   illusory." *Grassi, supra*, 894 F.2d at 185 (federal district courts have both the authority

5   and the responsibility to examine motives underlying partial assignment which destroys

6   diversity and to disregard assignment in determining jurisdiction if it is found to have

7   been made principally to defeat removal).

8                   d.      Citizenship of Doe Defendants. Pursuant to 28 U.S.C. Section

9   1441(a), for purposes of removal, the citizenship of defendants Does 1-500 must be

10  disregarded because plaintiffs sued those defendants under fictitious names.

11                           **REMOVAL TIMELY FILED**

12          3.      Service was made on OMP's registered agent for service of process on July

13  24, 2007. (Buonaiuto Dec. ¶ 3.) McKesson was served, via its registered agent, on July

14  30, 2007. (*Id*. ¶ 4.) Therefore, this Removal was timely filed within 30 days of service,

15  pursuant to 28 U.S.C. § 1446(b).

16                           **CONSENT TO REMOVAL**

17          4.      The only other named defendant, McKesson, was fraudulently joined, and

18  its consent is therefore not required for removal; notwithstanding, McKesson consents to

19  OMP's removal of this action to this Court. (Buonaiuto Dec. ¶ 4.)

20           **STATE COURT WITHIN THE COURT'S JURISDICTION**

21          5.      The San Francisco County, California Superior Court, from which OMP

22  removes this action, is within this Court's jurisdiction.

23                       **STATE COURT PLEADINGS**

24          6.      Copies of the state court pleadings known to OMP to have been filed in this

25  action are collectively attached to the Buonaiuto Dec. as Exhibit A.

26      **FILING AND SERVICE OF NOTICE OF REMOVAL AND REMOVAL**

27          7.      OMP will file a notice of the filing of this Notice of Removal and Removal

28  in the San Francisco County Superior Court and will serve plaintiffs' counsel with a

1    copy. (Buonaiuto Dec. ¶ 5.)

2        WHEREFORE, OMP hereby removes to this Court San Francisco County

3    Superior Court Case No. CGC-07-463331.

4

5    Dated: August 2, 2007                    DRINKER BIDDLE & REATH

6

7                                             MATTHEW P. SMITH

8                                             Attorneys for Defendants
                                             ORTHO-MCNEIL PHARMACEUTICAL,
9                                             INC. and MCKESSON CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

                                              13

SF1\387412\1        NOTICE OF REMOVAL AND REMOVAL                        CASE NO.