**EXHIBIT A**

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
07/24/2007
Log Number 512431260



**TO:**   Taysen Van Itallie, Associate General Counsel
Johnson & Johnson
1 Johnson & Johnson Plaza
New Brunswick, NJ, 08933

**RE:**    **Process Served in California**

**FOR:**   Ortho-McNeil Pharmaceutical, Inc. (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Chole Allen, etc., et al., Pltfs. vs. Ortho-Mcneil Pharmaceutical, Inc., etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), First Amended Complaint, Demand for Jury Trial, Notice to Plaintiff, Stipulation Form, Statement Form |
| **COURT/AGENCY:** | San Francisco County- San Francisco, Superior Court, CA<br>Case # CGC07461636 |
| **NATURE OF ACTION:** | Product Liability Litigation - Negligence - Failed to excercise ordinary care in the manufacturing, sale, testing and/or distribution of Ortho Evra in that Defendants knew or should have known that using Ortho Evra created high risk of strokes,pulmonary emboli, blood clots, deep vein thrombosis and heart attacks as well as other severe permanent health problems. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/24/2007 at 15:00 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response // August 24, 2007 at 9:00 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Sonia Tandon<br>Law Offices of Shawn Khorrami<br>14550 Haynes Street<br>Third Floor<br>Van Nuys, CA, 91411<br>818 947 5111 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight, 798725813312<br>Email Notification, Michele Bacorn MBACORN@CORUS.JNJ.COM |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Dianne Christman<br>818 West Seventh Street<br>Los Angeles, CA, 90017<br>213-337-4615 |

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of the package only, not of its contents.

7-24-07  3:00

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ORTHO-MCNEIL PHARMACEUTICAL, INC., a Delaware
Corporation, MCKESSON CORP. and and DOES 1-500 inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHOLE ALLEN, an individual, LISA ANDERSON, an individual,
LAUREN ANDREAS, an individual, BRANDI BAILEY, an individual,

Additional Parties Attachment form is attached.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* | CGC-07-461636 |
|---|---|---|

SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY
Civil Center Courthouse Branch
400 McAllister Street, San Francisco, CA 94102-4514

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Sonia Tandon (Bar # 239614)                                        Phone No. (818) 947-5111
LAW OFFICES OF SHAWN KHORRAMI                      Fax No. (818) 947-5121
14550 Haynes Street, Third Floor, Van Nuys, California 91411

| DATE:<br>*(Fecha)* | 7  8 2007 | Clerk, by<br>*(Secretario)* | GORDON PARK-LI | , Deputy<br>*(Adjunto)* KAREN TO |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):*  ORTHO-MCNEIL PHARMACEUTICAL, INC., a Delaware Corporation

under: [X] CCP 416.10 (corporation)         [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
       [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| SHORT TITLE: CHOLE ALLEN, et al. v. ORTHO-MCNEIL PHARMACEUTICAL, INC. et al. | CASE NUMBER: CGC-07-461636 |
|---|---|

### INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party):*

[X] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

COENEKA BALL, an individual, MONTOYA BALL, an individual, TIESHIA BAMSEY, an individual, TERTULIETTE BELIARD, an individual, TAMELA BLACKMAN, an individual, DELORES BONNER, an individual, JASMINE BOX, a minor, by and through her guardian ad litem SCHARLETTA BOX, LACI BRIGNAC, an individual, JERHONDA BROWN, an individual, DAMITA BYNUM, an individual, QUIEONNA CARPENTER, an individual, ERIKA CARR, an individual, WENDY CARRIGAN, an individual, M. CHARLOTTE CHEATHAM, an individual, SHERIE COLLINS, an individual, KERRIE COOPER, an individual, TERRY COREAU, an individual, MARANDA CRUMEDY, an individual, CENNIE DARBY, an individual, JOEY DAVIS, an individual, LAURICE DAVIS, an individual, SUSAN DOMAN, an individual, ALCOLA EDWARDS, an individual, SARAH EVANS, an individual, TRYSHA GRAVES, an individual, ALEJANDRIAN GARZA, an individual, GERALDINE GILLIGAN, an individual, RHONDA GRANJA, an individual, STACY GREENWOOD, an individual, REBECCA GRICE, an individual, SARAH GRIFFITH, an individual, DOROTHY GURERRIER, an individual, TAMIERA HARRIS, an individual, MICHELE HELKENN, an individual, NADIA HERNANDEZ, an individual, COURTNEY HEWETT, a minor by and through her guardian ad litem, ANNETTE HEWETT, ROCKENIA HUDSON, an individual, JENNIFER JACKSON, an individual, CLARICE JENKINS, an individual, KRYSTAL JENNINGS, an individual, TIFFANY JENSEN (PENKE), an individual, CANDIS JOHNSON, an individual, DOMONIQUE JOHNSON, an individual, JANNOEL JOHNSON, an individual, MICHELLE JOHNSON, an individual, NICOLE JOHNSON, an individual, TAMMY JONES, an individual, TIARA JOYNER, an individual, AMANDA KING, an individual, YANA KRISHTAL, an individual, VALERIE LANE, a minor by and through her guardian ad litem, VIVIAN LANE, DANA LEWIS, an individual, MARY LEWIS, an individual, DARCI LIDSTER, an individual, MICHELLE LOCKETT, an individual, DENISE LUCERO, an individual, VIRGINIA MANGANO, an individual, TRACI MARGHOTTA, an individual, LENIKA MCNAIR, an individual, JUDY MICKENS, an individual, ARIES MITCHELL, an individual, TOSHEA MORGAN, an individual, STEPHANIE MULLINGS, an individual, TYREE NEAL, an individual, JULIANA PAIZ, an individual, ERINA PARKER, an individual, ERIKA PENA, an individual, JENNIFER PROCH, an individual, TRACY RILES, an individual, URSHALA RIVERS, an individual, MARGARET ROGERS, an individual, TAMANISHA RUBIN, an individual, CARRIE RYAN, an individual, IESHIA SCOTT, an individual, REBECCA SHERRY, an individual, TONYA SIMMS, an individual, JESSICA SMITH, an individual, LINDA TANNER, an individual, CLEO THOMPSON, an individual, CRYSTAL WALDO, an individual, KRISTEN WALKER, an individual, TIFFANY WALKER, an individual, NIKKIA MARTIN, a minor by and through her guardian ad litem, LAURA WASHINGTON, JOYCE WATERS, an individual, CRYSTAL WEAVER, an individual, DAWN WHITE, an individual, MARIE WILLIAMS, an individual, SHERITA WILLIAMS, an individual, ROBBIN WINTERS, an individual, CATHY WOOD, an individual, and RAMONA WRIGHT, an individual

Form Adopted by Rule 982(a)(9)(A)
Judicial Council of California
982(a)(9)(A) [New January 1, 1993]
Mandatory Form

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

*LexisNexis® Automated California Judicial Council Forms*

1  SHAWN KHORRAMI, ESQ., SBN 180411 •
   SONIA TANDON, ESQ., SBN 239614
2  LAW OFFICES OF SHAWN KHORRAMI
   14550 Haynes Street
3  Third Floor
   Van Nuys, California 91411
4  Telephone: (818) 947-5111
   Facsimile: (818) 947-5121
5  email: skhorrami@khorrami.com

6  BRIAN KABATECK, ESQ., SBN 152054
   RICHARD KELLNER, ESQ., SBN 171416
7  KABATECK BROWN KELLNER LLP
   350 S. Grand Ave.
8  39th Floor
   Los Angeles, CA 90071 .
9  Telephone: (213) 217-5000
   Facsimile: (213) 217-5010
10 email: bsk@kbklawyers.com

11 Attorneys for Plaintiffs

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                       COUNTY OF SAN FRANCISCO
14

15 CHOLE ALLEN, an individual; LISA            )   Case No. CGC-07-461636
   ANDERSON, an individual; LAUREN             )
16 ANDREAS, an individual; BRANDI BAILEY, )
   an individual; COENEKA BALL, an             )   FIRST AMENDED COMPLAINT FOR
17 individual; MONTOYA BALL, an individual; )     DAMAGES BASED ON:
   TIESHIA BAMSEY, an individual;              )
18 TERTULIETTE BELIARD, an individual;         )   1.   NEGLIGENCE
   TAMELA BLACKMAN, an individual;             )   2.   STRICT PRODUCT LIABILITY -
19 DELORES BONNER, an individual;              )        FAILURE TO WARN
   JASMINE BOX, a minor, by and through her )      3.   BREACH OF EXPRESS
20 guardian ad litem SCHARLETTA BOX; LACI )          WARRANTY
   BRIGNAC, an individual; JERHONDA           )    4.   BREACH OF IMPLIED
21 BROWN, an individual; DAMITA BYNUM,         )        WARRANTY
   an individual; QUIEONNA CARPENTER, an )      5.   NEGLIGENT
22 individual; ERIKA CARR, an individual;      )        MISREPRESENTATION
   WENDY CARRIGAN, an individual; M.           )   6.   FRAUD
23 CHARLOTTE CHEATHAM, an individual;          )
   SHERIE COLLINS, an individual; KERRI        )        DEMAND FOR JURY TRIAL
24 COOPER, an individual; TERRY COREAU,        )
   an individual; MARANDA CRUMEDY, an          )
25 individual; CENNIE DARBY, an individual;    )
   JOEY DAVIS, an individual; LAURICE          )
26 DAVIS, an individual; SUSAN DOMAN, an       )
   individual; ALCOLA EDWARDS, an              )
27 individual; SARAH EVANS, an individual;     )
   TRYSHA GRAVES, an individual;               )
28 ALEJANDRINA GARZA, an individual;           )

                                    1
FIRST AMENDED COMPLAINT FOR DAMAGES

1   GERALDINE GILLIGAN, an individual;          )
    RHONDA GRANJA, an individual; STACY         )
2   GREENWOOD, an individual; REBECCA           )
    GRICE, an individual; SARAH GRIFFITH, an    )
3   individual; DOROTHY GURERRIER, an           )
    individual; TAMIERA HARRIS, an individual;  )
4   MICHELE HELKENN, an individual; NADIA       )
    HERNANDEZ, an individual; COURTNEY          )
5   HEWETT, a minor by and through her          )
    guardian ad litem, ANNETTE HEWETT;          )
6   ROCKENIA HUDSON, an individual;             )
    JENNIFER JACKSON, an individual;            )
7   CLARICE JENKINS, an individual;             )
    KRYSTAL JENNINGS, an individual;            )
8   TIFFANY JENSEN (PENKE), an individual;      )
    CANDIS JOHNSON, an individual;              )
9   DOMONIQUE JOHNSON, an individual;           )
    JANNOEL JOHNSON, an individual;             )
10  MICHELLE JOHNSON, an individual;            )
    NICOLE JOHNSON, an individual; TAMMY        )
11  JONES, an individual; TIARA JOYNER, an      )
    individual; AMANDA KING, an individual;     )
12  YANA KRISHTAL, an individual; VALERIE       )
    LANE, a minor by and through her guardian ad )
13  litem, VIVIAN LANE; DANA LEWIS, an          )
    individual; MARY LEWIS, an individual;      )
14  DARCI LIDSTER, an individual; MICHELLE      )
    LOCKETT, an individual; DENISE LUCERO,      )
15  an individual; VIRGINIA MANGANO, an         )
    individual; TRACI MARGHOTTA, an             )
16  individual; LENIKA MCNAIR, an individual;   )
    JUDY MICKENS, an individual; ARIES          )
17  MITCHELL, an individual; TOSHEA             )
    MORGAN, an individual; STEPHANIE            )
18  MULLINGS, an individual; TYREE NEAL, an     )
    individual; JULIANA PAIZ, an individual;    )
19  ERINA PARKER, an individual; ERIKA          )
    PENA, an individual; JENNIFER PROCH, an     )
20  individual; TRACY RILES, an individual;     )
    URSHALA RIVERS, an individual;              )
21  MARGARET ROGERS, an individual;             )
    TAMANISHA RUBIN, an individual;             )
22  CARRIE RYAN, an individual; IESHIA          )
    SCOTT, an individual; REBECCA SHERRY,       )
23  an individual; TONYA SIMMS, an individual;  )
    JESSICA SMITH, an individual; LINDA         )
24  TANNER, an individual; CLEO THOMPSON,       )
    an individual; CRYSTAL WALDO, an            )
25  individual; KRISTEN WALKER, an              )
    individual; TIFFANY WALKER, an              )
26  individual; NIKKIA MARTIN, a minor by and   )
    through her guardian ad litem, LAURA        )
27  WASHINGTON; JOYCE WATERS, an                )
    individual; CRYSTAL WEAVER, an              )
28  individual; DAWN WHITE, an individual;      )

2

1   MARIE WILLIAMS, an individual; SHERITA )
    WILLIAMS, an individual; ROBBIN          )
2   WINTERS, an individual; CATHY WOOD, an )
    individual; RAMONA WRIGHT, an            )
3   individual,                              )
                                             )
4              Plaintiffs                    )
                                             )
5              v.                            )
                                             )
6   ORTHO-MCNEIL PHARMACEUTICAL,             )
    INC., a Delaware Corporation; MCKESSON   )
7   CORP and DOES 1-500, inclusive.          )
                                             )
8              Defendants                    )
                                             )
9

10        Plaintiffs allege as follows:

11                        **INTRODUCTION**

12        1.      Plaintiffs are all individuals who have consumed Defendant ORTHO-MCNEIL

13   PHARMACEUTICAL INC.'s drug Ortho Evra® (hereinafter referred to as "Ortho Evra". Each

14   of the Plaintiffs herein have suffered and/or may continue to suffer potentially fatal side effects

15   such as strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks.

16        2.      Defendant ORTHO-MCNEIL PHARMACEUTICAL INC (hereinafter "ORTHO-

17   MCNEIL") designed, researched, manufactured, advertised, promoted, marketed sold and/or

18   distributed Ortho Evra. Furthermore, Defendant ORTHO-MCNEIL concealed its knowledge of

19   Ortho Evra's risks and trivialized the serious side effects of Ortho Evra from Plaintiffs,

20   Plaintiff's physicians, pharmacists and the public in general.

21        3.      Defendant MCKESSON CORP ("hereinafter "MCKESSON") is a corporation

22   whose principle place of business is San Francisco, California. MCKESSON distributed and sold

23   Ortho Evra in and throughout the State of California.

24        4.      Ortho Evra is an adhesive transdermal birth control patch that delivers continuous

25   levels of the hormones progestin and estrogen through the skin and into the blood stream to

26   prevent pregnancy. Ortho Evra was approved by the FDA in November 2001 and since has been

27   used by over 4 million women. On November 10, 2005 the FDA issued a warning about the

28   increased risks of blood clots associated with the use of Ortho Evra. Specifically, users of Ortho

                                    3

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1 | Evra are exposed to 60% more total estrogen in their blood than users of the typical birth control
2 | pill which contains 35 micrograms of estrogen.

3 | **JURISDICTION AND VENUE**

4 |     5.     The California Superior Court has jurisdiction over this action pursuant to
5 | California Constitution Article VI, Section 10, which grants the Superior Court "original
6 | jurisdiction in all causes except those given by statute to other trial courts." The Statutes under
7 | which this action is brought do not specify any other basis for jurisdiction.

8 |     6.     The California Superior Court has jurisdiction over the Defendants because, based
9 | on information and belief, each is a corporation and/or entity and/or person organized under the
10 | laws of the State of California, a foreign corporation or association authorized to do business in
11 | California and registered with the California Secretary of State or has sufficient minimum
12 | contacts in California, is a citizen of California, or otherwise intentionally avails itself of the
13 | California market so as to render the exercise of jurisdiction over it by the California courts
14 | consistent with traditional notions of fair play and substantial justice.

15 |     7.     Venue is proper in this Court pursuant to California Code of Civil Procedure
16 | Section 395 in that Defendant MCKESSON has its principle place of business in San Francisco.

17 |     8.     Furthermore Defendants ORTHO-MCNEIL and MCKESSON have purposefully
18 | availed themselves of the benefits and the protections of the laws within the State of California.
19 | Defendant MCKESSON has its principle place of business within the state. Defendants ORTHO-
20 | MCNEIL and MCKESSON have had sufficient contact such that the exercise of jurisdiction
21 | would be consistent with the traditional notions of fair play and substantial justice.

22 |     9.     Plaintiffs each individually seek relief that is within the jurisdictional limits of the
23 | court.

24 | **PARTIES**

25 | **PLAINTIFFS**

26 |     10.     Plaintiff CHOLE ALLEN is a resident of Columbia, South Carolina, who was
27 | prescribed Ortho Evra and was severely injured as a result.

28 |     11.     Plaintiff LISA ANDERSON is a resident Thornville, Ohio, who was prescribed

4

FIRST AMENDED COMPLAINT FOR DAMAGES

1    Ortho Evra and was severely injured as a result.

2         12.    Plaintiff LAUREN ANDREAS is a resident Bishop, California, who was

3    prescribed Ortho Evra and was severely injured as a result.

4         13.    Plaintiff BRANDI BAILEY is a resident of Cut-Off, Lousiana, who was

5    prescribed Ortho Evra and was severely injured as a result.

6         14.    Plaintiff COENEKA BALL is a resident of Sherman, Mississippi, who was

7    prescribed Ortho Evra and was severely injured as a result.

8         15.    Plaintiff MONTOYA BALL is a resident of Hinesville, Georgia, who was

9    prescribed Ortho Evra and was severely injured as a result.

10        16.    Plaintiff TIESHIA BAMSEY is a resident of Greensboro, North Carolina, who

11   was prescribed Ortho Evra and was severely injured as a result.

12        17.    Plaintiff TERTULIETTE BELIARD is a resident of Miami, Florida, who was

13   prescribed Ortho Evra and was severely injured as a result.

14        18.    Plaintiff TAMELA BLACKMAN is a resident of Circleville, Ohio, who was

15   prescribed Ortho Evra and was severely injured as a result.

16        19.    Plaintiff DELORES BONNER is a resident of Charlotte, North Carolina, who was

17   prescribed Ortho Evra and was severely injured as a result.

18        20.    Plaintiff JASMINE BOX is the daughter of Scharletta Box. Plaintiff JASMINE

19   BOX is a minor and is a resident of Rockford, Illinois, who was prescribed Ortho Evra and was

20   severely injured as a result.

21        21.    Plaintiff LACI BRIGNAC is a resident of Paulina, Louisiana, who was prescribed

22   Ortho Evra and was severely injured as a result.

23        22.    Plaintiff JERHONDA BROWN is a resident of Milwaukee, Wisconsin, who was

24   prescribed Ortho Evra and was severely injured as a result.

25        23.    Plaintiff DAMITA BYNUM is a resident of East Orange, New Jersey, who was

26   prescribed Ortho Evra and was severely injured as a result.

27        24.    Plaintiff QUIEONNA CARPENTER is a resident of Columbus, Georgia, who

28   was prescribed Ortho Evra and was severely injured as a result.

5

FIRST AMENDED COMPLAINT FOR DAMAGES

1      25.     Plaintiff ERIKA CARR is a resident of Greenville, Mississippi, who was

2  prescribed Ortho Evra and was severely injured as a result.

3      26.     Plaintiff WENDY CARRIGAN is a resident of Conroe, Texas, who was

4  prescribed Ortho Evra and was severely injured as a result.

5      27.     Plaintiff M. CHARLOTTE CHEATHAM is a resident of Shreveport, Louisiana,

6  who was prescribed Ortho Evra and was severely injured as a result.

7      28.     Plaintiff SHERIE COLLINS is a resident of Milwaukee, Wisconsin, who was

8  prescribed Ortho Evra and was severely injured as a result.

9      29.     Plaintiff KERRI COOPER is a resident Bronx, New York, who was prescribed

10  Ortho Evra and was severely injured as a result.

11     30.     Plaintiff TERRY COREAU is a resident of Norwalk, Connecticut, who was

12  prescribed Ortho Evra and was severely injured as a result.

13     31.     Plaintiff MARANDA CRUMELY is a resident of Wagarville, Alabama, who was

14  prescribed Ortho Evra and was severely injured as a result.

15     32.     Plaintiff CENNIE DARBY is a resident of Cambria Heights, New York, who was

16  prescribed Ortho Evra and was severely injured as a result.

17     33.     Plaintiff JOEY DAVIS is a resident of Greenville, North Carolina, who was

18  prescribed Ortho Evra and was severely injured as a result.

19     34.     Plaintiff LAURICE DAVIS is a resident of Barstow, California, who was

20  prescribed Ortho Evra and was severely injured as a result.

21     35.     Plaintiff SUSAN DOMAN is a resident of Calhoun, Georgia, who was prescribed

22  Ortho Evra and was severely injured as a result.

23     36.     Plaintiff ALCOLA EDWARDS is a resident of Chicago Heights, Illinois, who

24  was prescribed Ortho Evra and was severely injured as a result.

25     37.     Plaintiff SARAH EVANS is a resident of Novi, Michigan, who was prescribed

26  Ortho Evra and was severely injured as a result.

27     38.     Plaintiff TRYSHA GRAVES is a resident of Petersburg, Virginia, who was

28  prescribed Ortho Evra and was severely injured as a result.

6

FIRST AMENDED COMPLAINT FOR DAMAGES

1    39.    Plaintiff ALEJANDRINA GARZA is a resident of Kingsville, Texas, who was

2    prescribed Ortho Evra and was severely injured as a result.

3    40.    Plaintiff GERALDINE GILLIGAN is a resident of Bear, Delaware, who was

4    prescribed Ortho Evra and was severely injured as a result.

5    41.    Plaintiff RHONDA GRANJA is a resident of Concord, North Carolina, who was

6    prescribed Ortho Evra and was severely injured as a result.

7    42.    Plaintiff STACY GREENWOOD is a resident of Lebanon, Missouri, who was

8    prescribed Ortho Evra and was severely injured as a result.

9    43.    Plaintiff REBECCA GRICE is a resident of Niles, Michigan, who was prescribed

10    Ortho Evra and was severely injured as a result.

11    44.    Plaintiff SARAH GRIFFITH is a resident of Albuquerque, New Mexico, who was

12    prescribed Ortho Evra and was severely injured as a result.

13    45.    Plaintiff DOROTHY GUERRIER is a resident of Decatour, Alabama, who was

14    prescribed Ortho Evra and was severely injured as a result.

15    46.    Plaintiff TAMIERA HARRIS is a resident of Philadelphia, Pennsylvania, who

16    was prescribed Ortho Evra and was severely injured as a result.

17    47.    Plaintiff MICHELE HELKENN is a resident of Vista, California, who was

18    prescribed Ortho Evra and was severely injured as a result.

19    48.    Plaintiff NADIA HERNANDEZ is a resident of Midvale, Utah, who was

20    prescribed Ortho Evra and was severely injured as a result.

21    49.    Plaintiff COURTNEY HEWETT is the daughter of Annette Hewett. Plaintiff

22    COURTNEY HEWETT is a minor and is a resident of Supply, North Carolina, who was

23    prescribed Ortho Evra and was severely injured as a result.

24    50.    Plaintiff ROCKENIA HUDSON is a resident of Albany, Georgia, who was

25    prescribed Ortho Evra and was severely injured as a result.

26    51.    Plaintiff JENNIFER JACKSON is a resident of Bloomfield, Iowa, who was

27    prescribed Ortho Evra and was severely injured as a result.

28    52.    Plaintiff CLARICE JENKINS is a resident of Columbia, South Carolina, who was

7

**FIRST AMENDED COMPLAINT FOR DAMAGES**

prescribed Ortho Evra and was severely injured as a result.

53.    Plaintiff KRYSTAL JENNINGS is a resident of Humble, Texas, who was prescribed Ortho Evra and was severely injured as a result.

54.    Plaintiff TIFFANY JENSEN (PENKE) is a resident of Great Mills, Maryland, who was prescribed Ortho Evra and was severely injured as a result.

55.    Plaintiff CANDIS JOHNSON is a resident of Columbia, South Carolina, who was prescribed Ortho Evra and was severely injured as a result.

56.    Plaintiff DOMONIQUE JOHNSON is a resident of Chicago, Illinois, who was prescribed Ortho Evra and was severely injured as a result.

57.    Plaintiff JANNOEL JOHNSON is a resident of Vancouver, Washington, who was prescribed Ortho Evra and was severely injured as a result.

58.    Plaintiff MICHELLE JOHNSON is a resident of Greenbelt, Maryland, who was prescribed Ortho Evra and was severely injured as a result.

59.    Plaintiff NICOLE JOHNSON is a resident of Pittsburgh, California, who was prescribed Ortho Evra and was severely injured as a result.

60.    Plaintiff TAMMY JONES is a resident of Baker, Louisiana, who was prescribed Ortho Evra and was severely injured as a result.

61.    Plaintiff TIARA JOYNER is a resident of Milwaukee, Wisconsin, who was prescribed Ortho Evra and was severely injured as a result.

62.    Plaintiff AMANDA KING is a resident of Monroe, Iowa, who was prescribed Ortho Evra and was severely injured as a result.

63.    Plaintiff YANA KRISHTAL is a resident of Oak Harbor, Washington, who was prescribed Ortho Evra and was severely injured as a result.

64.    Plaintiff VALERIE LANE is the daughter of Vivian Lane.  Plaintiff VALERIE LANE is a minor and is a resident of Belleville, Illinois, who was prescribed Ortho Evra and was severely injured as a result.

65.    Plaintiff DANA LEWIS is a resident of Lake Charles, Louisiana, who was prescribed Ortho Evra and was severely injured as a result.

8

FIRST AMENDED COMPLAINT FOR DAMAGES

66.  Plaintiff MARY LEWIS is a resident of Winchester, Kentucky, who was prescribed Ortho Evra and was severely injured as a result.

67.  Plaintiff DARCI LIDSTER is a resident of Grand Haven, Michigan, who was prescribed Ortho Evra and was severely injured as a result.

68.  Plaintiff MICHELLE LOCKETT is a resident of Chicago, Illinois, who was prescribed Ortho Evra and was severely injured as a result.

69.  Plaintiff DENISE LUCERO is a resident of Herald, California, who was prescribed Ortho Evra and was severely injured as a result.

70.  Plaintiff VIRGINIA MANGANO is a resident of Reistertown, Maryland, who was prescribed Ortho Evra and was severely injured as a result.

71.  Plaintiff TRACI MARGIOTTA is a resident of Bogalusa, Louisiana, who was prescribed Ortho Evra and was severely injured as a result.

72.  Plaintiff LENIKA MCNAIR is a resident of Renton, Washington, who was prescribed Ortho Evra and was severely injured as a result.

73.  Plaintiff JUDY MICKENS is a resident of Los Angeles, California, who was prescribed Ortho Evra and was severely injured as a result.

74.  Plaintiff ARIES MITCHELL is a resident of Dallas, Texas, who was prescribed Ortho Evra and was severely injured as a result.

75.  Plaintiff TOSHEA MORGAN is a resident of Houston, Texas, who was prescribed Ortho Evra and was severely injured as a result.

76.  Plaintiff STEPHANIE MULLINGS is a resident of Lumberton, Mississsippi, who was prescribed Ortho Evra and was severely injured as a result.

77.  Plaintiff TYREE NEAL is a resident of Colorado Springs, Colorado, who was prescribed Ortho Evra and was severely injured as a result.

78.  Plaintiff JULIANA PAIZ is a resident of Downey, California, who was prescribed Ortho Evra and was severely injured as a result.

79.  Plaintiff ERINA PARKER is a resident of Mobile, Alabama, who was prescribed Ortho Evra and was severely injured as a result.

9

FIRST AMENDED COMPLAINT FOR DAMAGES

80.   Plaintiff ERIKA PENA is a resident of Allentown, Pennsylvania, who was prescribed Ortho Evra and was severely injured as a result.

81.   Plaintiff JENNIFER PROCH is a resident of Jessup, Pennsylvania, who was prescribed Ortho Evra and was severely injured as a result.

82.   Plaintiff TRACEY RILES is a resident of North Littlerock, Arkansas, who was prescribed Ortho Evra and was severely injured as a result.

83.   Plaintiff URSHALA RIVERS is a resident of Cantonment, Florida, who was prescribed Ortho Evra and was severely injured as a result.

84.   Plaintiff MARGARET ROGERS is a resident of Columbia, Maryland, who was prescribed Ortho Evra and was severely injured as a result.

85.   Plaintiff TAMANISHA RUBIN is a resident of Los Angeles, California, who was prescribed Ortho Evra and was severely injured as a result.

86.   Plaintiff CARRIE RYAN is a resident of Syracuse, Utah, who was prescribed Ortho Evra and was severely injured as a result.

87.   Plaintiff IESHIA SCOTT is a resident of York, Alabama, who was prescribed Ortho Evra and was severely injured as a result.

88.   Plaintiff REBECCA SHERRY is a resident of Round Lake, New York, who was prescribed Ortho Evra and was severely injured as a result.

89.   Plaintiff TONYA SIMMS is a resident of Dallas, Texas, who was prescribed Ortho Evra and was severely injured as a result.

90.   Plaintiff JESSICA SMITH is a resident of Liberty, Missouri, who was prescribed Ortho Evra and was severely injured as a result.

91.   Plaintiff LINDA TANNER is a resident of Ladson, South Carolina, who was prescribed Ortho Evra and was severely injured as a result.

92.   Plaintiff CLEO THOMPSON is a resident of Madison, Alabama, who was prescribed Ortho Evra and was severely injured as a result.

93.   Plaintiff CRYSTAL WALDO is a resident of Benton, Tennessee, who was prescribed Ortho Evra and was severely injured as a result.

10

94.    Plaintiff KRISTEN WALKER is a resident of Tusla, Oklahoma, who was prescribed Ortho Evra and was severely injured as a result.

95.    Plaintiff TIFFANY WALKER is a resident of Arlington, Virginia, who was prescribed Ortho Evra and was severely injured as a result.

96.    Plaintiff NIKKIA MARTIN is the daughter of Laura Washington. Plaintiff NIKKIA MARTIN is a minor and is a resident of Supply, North Carolina, who was prescribed Ortho Evra and was severely injured as a result.

97.    Plaintiff JOYCE WATERS is a resident of Louisville, Kentucky, who was prescribed Ortho Evra and was severely injured as a result.

98.    Plaintiff CRYSTAL WEAVER is a resident of Stockton, California, who was prescribed Ortho Evra and was severely injured as a result.

99.    Plaintiff, DAWN WHITE, is a resident of Valrico, Florida, who was prescribed Ortho Evra and was severely injured as a result.

100.    Plaintiff MARIE WILLIAMS is a resident of Suisun City, California, who was prescribed Ortho Evra and was severely injured as a result.

101.    Plaintiff SHERITA WILLIAMS is a resident of Temple Hills, Maryland, who was prescribed Ortho Evra and was severely injured as a result.

102.    Plaintiff ROBBIN WINTERS is a resident of Montgomery, Alabama, who was prescribed Ortho Evra and was severely injured as a result.

103.    Plaintiff CATHY WOOD is a resident of Willard, Ohio, who was prescribed Ortho Evra and was severely injured as a result.

104.    Plaintiff RAMONA WRIGHT is a resident of Sumter, South Carolina, who was prescribed Ortho Evra and was severely injured as a result.

**DEFENDANTS**

105.    Defendant ORTHO-MCNEIL is, and at all times material to this action was, a corporation organized, existing and doing business under and by the virtue of the laws of the State of Delaware, with its principle office located at 1000 Route 202 South, P.O. Box 300, Raritan, New Jersey 08869.

11

106.    Defendant ORTHO-MCNEIL is, and at all times material to this action was, authorized to do business, and was engaged in business in the State of California. ORTHO-MCNEIL derives substantial revenue from goods consumed within the State of California.

107.    Defendant ORTHO-MCNEIL includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their pr0esent officers, directors, employees, agents, representatives and other persons acting on their behalf.

108.    Plaintiffs are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of the defendant was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendant and its directors, officers and/or managing agents.

109.    At all times material to this action, Defendant ORTHO-MCNEIL developed, manufactured, marketed, promoted, sold and/or distributed Ortho Evra in the stream of commerce and in the State of California and the rest of the country.

110.    Defendant MCKESSON is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principle place of business in San Francisco, California. MCKESSON is, and at all times material to this action was, authorized to do business, and was engaged in substantial commerce and business under the laws of the State of California.

111.    Defendant MCKESSON includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

112.    Plaintiffs are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of Defendant MCKESSON was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification and authorization of the defendant

12

1   and its directors, officers and/or managing agents.

2        113.    At all times relevant to this action, Defendant MCKESSON packaged, distributed,

3   supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised,

4   promoted and purported to warn or to inform users regarding the risks pertaining to, and

5   assuaged concerns about the pharmaceutical Ortho Evra.

6        114.    The true names and capacities, whether individual, corporate, associate, or

7   otherwise, of Defendants named herein as DOES 1 through 500, and each of them, are unknown

8   to Plaintiffs, who therefore, sues said Defendants by such fictitious names.

9        115.    Plaintiffs will ask leave to amend this Complaint to state said Defendants' true

10  identities and capacities when the same has been ascertained.

11       116.    Plaintiffs are informed and believe and based thereupon allege that each of the

12  Defendants designated herein as DOE took part in and participated with the Defendant in all

13  matters referred to herein and was in some manner responsible for the injuries and losses suffered

14  by the Plaintiffs.

15       117.    Plaintiffs are informed and believe and based thereupon allege that at all times

16  herein mentioned each of the Defendants was the agent, servant and/or employee or occupied

17  other relationships with each of the other named Defendants and at all times herein mentioned

18  acted within the course and scope of said agency and/or employment and/or other relationship

19  and each other Defendant has ratified, consented to, and approved the acts of his agents,

20  employees, and representatives, and that each actively participated in, aided and abetted, or

21  assisted one another in the commission of the wrongdoing alleged in this Complaint.

22                        **GENERAL ALLEGATIONS APPLICABLE**
                          **TO ALL CAUSES OF ACTION**

23       118.    ORTHO-MCNEIL is the world's leading manufacturer of prescription

24  contraceptives as well as the current market leader in oral and patch contraceptive products.

25  ORTHO-MCNEIL offers a range of prescription birth control options to women, including Ortho

26  Evra, the first transdermal contraceptive patch, ten birth control pills and two diaphragms.

27       119.    The pharmaceutical drug at issue in this litigation is "Ortho Evra". Ortho Evra is

28  the first and only once a week birth control patch. It is worn on the skin for one week and

                                              13

FIRST AMENDED COMPLAINT FOR DAMAGES

replaced on the same day of the week for three consecutive weeks, with the fourth week free from the patch. Unlike traditional oral contraceptives, such as the birth control pill, that are ingested and metabolized by the body's digestive system, the Ortho Evra patch continuously releases estrogen and progestin *directly into* the bloodstream.

120.    ORTHO-MCNEIL filed a new drug application for Ortho Evra on or about December 21, 2000. In the same year, doctors at the FDA reviewing the clinical trials of the Ortho Evra patch warned that blood clots could be a problem if the patch were approved. This was after two of the women developed deep vein thrombosis (a blood clot that forms in the deep veins of leg or pelvic region) which led to pulmonary embolism (a serious and deadly condition of deep vein thrombosis where the clot breaks off into the lung and clogs an artery). One medical reviewer wrote that it would be important to study users after Ortho Evra came into the market for clot problems.

121.    Despite those concerns, Ortho Evra received FDA approval for the prevention of pregnancy in November of 2001. Since then, Ortho Evra has been prescribed to more than 4 million women and has become one of the fastest growing birth control method in the United States.

122.    Since its approval the there have been many reports that indicate the serious risks associated with the consumption of Ortho Evra. In particular, the FDA has logged 9,116 reports of adverse reactions to the patch in a **17 month** period. This is significantly higher than 1,237 adverse reports generated in a **6 year** period for ORTHO-MCNEIL's oral contraceptive, Ortho Tri-Cyclen. According to the FDA, this only represents 1% - 10% of patch related medical problems so these adverse reactions are actually more prevalent.

123.    Furthermore, reports provided by the FDA indicate that the risk of developing and/or dying from a blood clot while using the Ortho Evra patch is at least three times higher than when using birth control pills.

124.    On November 10, 2005, the FDA required that the warning label for Ortho Evra be updated to included a new warning indicating that use of Ortho Evra exposes women to a higher level of estrogen than use of other birth control methods. Specifically, the new bolded

14

warning stated that women who use Ortho Evra are exposed to about 60% more total estrogen in their blood than if they were taking a typical birth control pill containing 35 micrograms of estrogen. Increased levels of estrogen exposes women to a greater risk of serious side effects, particularly blood clots in the legs and lungs, heart attacks and strokes.

125.   Ortho Evra was, and still continues to be, aggressively marketed as an easy to use, safe, and effective alternative to oral contraceptives. Its main allure is in its convenience since Ortho Evra only needs to be applied once a week, unlike oral contraceptive that need to be taken daily to be effective.

126.   Defendant ORTHO-MCNEIL failed to appropriately warn Plaintiffs and prescribing physicians of the serious risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

127.   Despite the higher levels of estrogen that are known to be released by Ortho Evra and the blood clot warnings,  the package insert states that "there is limited epidemiological data available to determine whether safety with the transdermal route of administration is different than the oral route". The package insert goes on to say that "the information contained in this package insert is principally based on studies carried out in women who used combination **oral** contraceptives...".

128.   Defendant ORTHO-MCNEIL knew, or should have known, about the above mentioned risks based upon the state of knowledge of ORTHO-MCNEIL as it existed at that time. Additionally, ORTHO-MCNEIL failed to properly or adequately investigate the safety concerns of Ortho Evra.

129.   Defendant ORTHO-MCNEIL's  conduct fell below the duty of care that was owed by Defendants to Plaintiffs.

130.   Defendant ORTHO-MCNEIL misrepresented the known risks associated with the use of Ortho Evra. ORTHO-MCNEIL also made claims with regards to the safe and efficacious nature of their product in the prevention of pregnancy.

131.   Defendant ORTHO-MCNEIL negligently and recklessly failed to inform the public, prescribing healthcare professionals and the FDA of the risks of strokes, pulmonary

15

FIRST AMENDED COMPLAINT FOR DAMAGES

1  emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent

2  health problems associated with use of their product, Ortho Evra.

3       132.    Defendant ORTHO-MCNEIL was careless and negligent in their manufacturing,

4  testing, selling, distributing, merchandising, advertising, promoting, packaging, and marketing of

5  Ortho Evra.

6       133.    By reason of the foregoing, Plaintiffs have suffered from strokes, pulmonary

7  emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent

8  health problems.

9                          **FRAUDULENT CONCEALMENT**

10      134.    Any applicable statute of limitations have been tolled by the knowing and active

11 concealment and denial of facts as alleged herein by the Defendants. Plaintiffs have been kept in

12 ignorance of vital information essential to the pursuit of these claims, without any fault or lack of

13 diligence on their part. Plaintiffs could not have reasonably discovered the dangerous nature and

14 unreasonable adverse side effects associated with Ortho Evra. As a result, Plaintiffs did not

15 discover the facts giving rise to these claims until less than one year before the filing of this

16 Complaint.

17      135.    Defendants are and were under a continuing duty to disclose the true character,

18 quality and nature of the patch to Plaintiffs. Because of their concealment of the true character,

19 quality and nature of the contraceptive, Defendants are estopped from relying on any statute of

20 limitations defense.

21                          **FIRST CAUSE OF ACTION**
                                    *Negligence*
22              (Against Defendants ORTHO-MCNEIL and MCKESSON)

23      136.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of

24 this Complaint as though fully set forth in this paragraph.

25      137.    Defendants had a duty to exercise reasonable care in the manufacture, sale,

26 research, development, inspection, labeling, promoting, marketing, and/or distribution of Ortho

27 Evra into the stream of commerce, including a duty to assure that this patch did not cause users

28 to suffer from unreasonable, dangerous side effects.

16

**FIRST AMENDED COMPLAINT FOR DAMAGES**

138.    Defendants ORTHO-MCNEIL and MCKESSON failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, marketing and/or distribution of Ortho Evra into interstate commerce, in that Defendants knew or should have known that using Ortho Evra created a high risk of unreasonable dangerous side effects, including but not limited to the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

139.    Defendants ORTHO-MCNEIL and MCKESSON breached their duty to Plaintiffs and were negligent in the licensing, testing, design, manufacture, packaging, warning, advertising, promotion, distribution, and sale of Ortho Evra in that Defendants:

A.    Failed to use ordinary care in designing and manufacturing the Ortho Evra so as to avoid the aforementioned risks to Plaintiffs;

B.    Failed to accompany Ortho Evra with proper warnings regarding the possible adverse side effects associated with the use of the patch and the comparative severity and duration of such adverse effects, i.e., the warnings given did not accurately reflect the symptoms, scope or severity of the side effects;

C.    Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Ortho Evra;

D.    Failed to provide adequate training to medical care providers for appropriate use of Ortho Evra;

E.    Failed to warn Plaintiffs, either directly or indirectly, orally or in writing, about the following:

(i)    The need for comprehensive, regular monitoring to ensure early discovery of potentially serious side effects like blood clots, deep vein thrombosis and pulmonary emboli;

(ii)    The possibility of becoming injured, disabled or dying as a result of using Ortho Evra.

F.    Failed to adequately test and/or warn about the serious side effects of

17

FIRST AMENDED COMPLAINT FOR DAMAGES

Ortho Evra;

      G.    Failed to include adequate warnings with Ortho Evra that would alert Plaintiffs, physicians, hospitals, and clinics, to the potential risks and the nature, scope, severity, and duration of any serious side effects of Ortho Evra;

      H.    Continued to promote the efficacy and safety of Ortho Evra while providing little or no warnings, and downplaying any risks, even after Defendants knew of the risks of serious injury and or death;

      I.    Delayed warnings of, and then failed to provide adequate warnings about the serious injuries, which may have dissuaded medical providers from prescribing Ortho Evra and deprived women of information so that they can weigh the true risks against the benefits of prescribing Ortho Evra; and

      J.    Were otherwise careless or negligent.

140.    Despite the fact that Defendants knew or should have known that Ortho Evra caused unreasonably dangerous side effects, Defendants continued and are currently continuing to market, manufacture, distribute and/or sell Ortho Evra to consumers, including Plaintiffs and their doctors.

141.    Defendants knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

142.    Plaintiffs are entitled to punitive damages because the Defendants' failure to warn was reckless and without regard for the public's safety and welfare. The Defendants misled both the medical community and the public at large, including Plaintiffs, by making false representations about the safety of Ortho Evra. The Defendants downplayed, understated, and disregarded their knowledge of the serious side effects associated with the use of Ortho Evra despite available information demonstrating that their products were likely to cause serious and potentially fatal side effects to users like Plaintiffs.

143.    As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of the Defendants described herein, Plaintiffs were, and/or still are,

18

caused to suffer severe injuries including diminished enjoyment of life, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

144.    Based upon information and belief, Defendants actually knew of Ortho Evra's defective nature, as set forth herein, but continued, and still continue, to design, manufacture, market and sell the patch so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs, in conscious disregard of the foreseeable harm caused by the patch.

145.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of Ortho Evra constituted malice, oppression and fraud, including, but not limited to:

> A.    Aggressively marketing and promoting Ortho Evra, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;
>
> B.    Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics, and other users to the potential risks and the nature, scope, severity, and duration of any serious side effects of the patch, particularly, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;
>
> C.    Continuing to promote the efficacy and safety of the patch, while providing little or no warnings, and downplaying any risks, even after Defendants knew of the increased risks associated with use of Ortho Evra as opposed to oral contraceptives;
>
> D.    Delaying warnings of the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of using the patch, was fraudulent, knowing

19

1    misconduct, and/or conduct undertaken recklessly and with conscious

2    disregard for the safety of consumers such as the Plaintiffs, such as to

3    constitute despicable conduct, and oppression, fraud and malice, and such

4    conduct was at all times relevant ratified by the corporate Defendants

5    herein, thereby entitling Plaintiffs punitive damages in an amount

6    appropriate to punish and set an example of Defendant.

7    146.    As a result of ORTHO-MCNEIL and MCKESSON's conduct, Plaintiffs suffered

8    injuries and damages herein.

9    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set

10    forth herein below.

11    ## SECOND CAUSE OF ACTION
*Strict Product Liability - Failure to Warn*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

12

13    147.    Plaintiffs incorporate by reference the allegations in all proceeding paragraphs of

14    this Complaint as though fully set forth in this paragraph.

15    148.    Defendants ORTHO-MCNEIL and MCKESSON are the manufacturer and/or

16    supplier of Ortho Evra.

17    149.    Ortho Evra manufactured and/or supplied by Defendants ORTHO-MCNEIL and

18    MCKESSON was unaccompanied by proper warnings regarding all possible side effects

19    associated with their use and the comparative severity, incidence, and duration of such adverse

20    effects, i.e., the warnings given did not accurately reflect the signs, symptoms, incidence, scope

21    or severity of the side effects.

22    150.    Defendants failed to perform adequate testing that would have shown that Ortho

23    Evra possessed serious potential side effects with respect to which full and proper warnings

24    accurately and fully reflecting symptoms, scope and severity should have been made, both with

25    respect to the use of the patch.

26    151.    Ortho Evra manufactured and/or supplied by Defendants was defective due to

27    inadequate post-marketing surveillance and/or warnings or instructions because, after the

28    manufacturer knew or should have known of the risks of injury from Ortho Evra, they failed to

20

**FIRST AMENDED COMPLAINT FOR DAMAGES**

provide adequate warnings to users or consumers of the patch and continued, and still continue, to aggressively promote Ortho Evra.

152.    Ortho Evra manufactured and/or supplied by Defendants was defective because Defendants were aware that the amount of estrogen that is released from the patch is much higher than the levels associated with oral contraceptives.

153.    As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiffs have been injured as described above.

154.    Based upon information and belief, Defendants actually knew of the defective nature of Ortho Evra, as set forth herein, but continued, and still continue, to design manufacture, market and sell Ortho Evra so as to maximize sales and profits at the expense of the health and safety of the public including Plaintiffs, in conscious disregard of the foreseeable harm caused by Ortho Evra.

155.    Plaintiffs could not , by reasonable exercise of care, have discovered the defects and dangers of Ortho Evra.

156.    Defendants conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution, and sale of Ortho Evra constituted malice, oppression and fraud, including, but not limited to:

> A.    Aggressively marketing and promoting Ortho Evra, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;
>
> B.    Failing to provide complete literature with regards to Ortho Evra, and indicating the need for monitoring while on the patch;
>
> C.    Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics and other users to the potential risks and the nature, scope, severity, and duration of any serious side effects of the drug, particularly the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other

21

severe permanent health problems;

D. Continuing to promote the efficacy and safety of the drug, while providing little or no warnings, and downplaying any risks, even after Defendants knew of the increased risks associated with Ortho Evra use;

E. Delaying warnings about the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of using the patch, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as the Plaintiffs, such as to constitute despicable conduct, fraud and malice, and such conduct was at all times relevant ratified by corporate Defendants herein, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish and set an example of Defendant.

157.   Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

158.   As a result of Defendants' conduct, Plaintiffs have sustained injuries described above.

159.   Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

### THIRD CAUSE OF ACTION
*Breach of Express Warranty*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

160.   Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

161.   Defendants, ORTHO-MCNEIL and MCKESSON, through description, affirmation of fact, and promise relating to Ortho Evra, to the FDA, prescribing physicians, and

22

the general public, including Plaintiffs, expressly warranted that Ortho Evra was safe and well accepted by users.

162.    Defendants, ORTHO-MCNEIL and MCKESSON further expressly warranted that Ortho Evra did not produce any side effects in excess of those risks associated with oral contraceptives, that the side effects were reflected accurately in the warnings, and that it was accurately tested and fit for its intended use.

163.    Ortho Evra does not conform to these express representations because it is not safe as its use produces serious adverse side effects including the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

164.    As such, Defendants' product was neither in conformity to the promises, descriptions or affirmations of fact made about the patch nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

165.    Defendants knew or should have known that, in fact, said representations and warranties were false and misleading in that Ortho Evra was not safe and/or fit for its intended use, and in fact resulted in serious injuries to the user.

166.    Plaintiffs relied on the express warranties of the Defendants herein. Members of the medical community, including physicians, and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of Ortho Evra in prescribing, recommending, and/or dispensing the product.

167.    Defendants thereafter breached their express warranties to Plaintiffs by: (i) manufacturing, marketing, packaging, labeling, and selling Ortho Evra to Plaintiffs in such a way that misstated the risks of injury, without warning or disclosure thereof by package and label of such risks to Plaintiffs or their prescribing physicians or pharmacists, or without so modifying or excluding such express warranties; (ii) manufacturing, marketing, packaging, labeling, and selling Ortho Evra to Plaintiffs, which failed to prevent pregnancy in a safe manner and without injury; and (iii) manufacturing, marketing, packaging, labeling, and selling Ortho Evra to Plaintiffs, thereby causing injury to each.

23

168.    As a direct and proximate result of Defendants' conduct the Plaintiffs were and still are caused to suffer severe injuries and physical pain including diminished enjoyment of life, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

169.    Plaintiffs are entitled to punitive damages because Defendants' failure to warn was reckless and without regard to their welfare. Defendants misled both the medical community and the public at large, including Plaintiffs, by making false representations about the safety of their product. Defendants downplayed, understated, and disregarded their knowledge of the serious side effects associated with the use of Ortho Evra, despite available information demonstrating that it was likely to cause serious and sometimes fatal side effects to users.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

### FOURTH CAUSE OF ACTION
#### *Breach of Implied Warranty*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

170.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

171.    At the time Defendants ORTHO-MCNEIL and MCKESSON marketed, sold, and distributed Ortho Evra, for use by Plaintiffs, Defendants knew of the use for which Ortho Evra was intended and impliedly warranted the patch to be of merchantable quality and safe and fit for its intended use.

172.    Defendants ORTHO-MCNEIL and MCKESSON impliedly represented and warranted to Plaintiffs, healthcare professionals and the FDA that the Ortha Evra it was supplying was safe and fit for ordinary use.

173.    Plaintiffs and members of the medical community relied on Defendants warranties that their product, Ortho Evra, was of merchantable quality and safe and fit for its intended use.

174.    Contrary to such implied warranties, Ortho Evra was not of merchantable quality or safe or fit for its intended use, because it was unreasonably dangerous and unfit for the ordinary purposes for which it was used, as described above.

24

175.    Defendant's conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution, and sale of Ortho Evra constituted malice, oppression and fraud, including but not limited to:

A.    Marketing and promoting the product aggressively, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-market surveillance;

B.    Failing to provide complete literature with regards to Ortho Evra and indicating the need for monitoring while on the patch;

C.    Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics and other users of the potential risks and the nature, scope, severity and duration of any serious side effects of the patch, particularly, the risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;

D.    Continuing to promote the efficacy and safety of Ortho Evra, while providing little or no warnings, and downplaying any risks, even after the Defendants knew of the increased risks associated with use of their product;

E.    Delaying warnings of, and then failing to provide adequate warnings about the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of prescribing the product, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers like Plaintiffs, such as to constitute despicable conduct, oppression, fraud and malice, and such conduct was at all times relevant ratified by the corporate Defendants herein, thereby entitling Plaintiffs punitive damages in an amount appropriate to punish and set an example

25

of the Defendants.

176.    As a direct, proximate and legal result of Defendants' negligence, carelessness and other wrongdoing described herein, Plaintiffs have sustained severe injuries as described above.

177.    Based upon information and belief, Defendants actually knew of Ortho Evra's defective nature, as set forth herein, but continued to design, manufacture, market, and sell Ortho Evra to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs in conscious disregard of the foreseeable harm caused by the patch.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

### FIFTH CAUSE OF ACTION
*Negligent Misrepresentation*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

178.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

179.    Defendants ORTHO-MCNEIL and MCKESSON, having undertaken to prepare, design, research, develop, manufacture, inspect, label, market, promote, and sell Ortho Evra, owed a duty to Plaintiffs and the medical community to provide them accurate and complete information regarding this product.

180.    The Defendants' advertising program, by containing affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Ortho Evra was safe, and had no unacceptable side effects.

181.    On information and belief, Plaintiffs aver that Defendants failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of Ortho Evra. Defendants deceived potential users and prescribers of the patch by relaying only allegedly positive information, while concealing, misstating and downplaying the known adverse and serious health effects.

182.    Defendants knew or were aware or should have known or been aware that Ortho Evra had been insufficiently tested and that it lacked necessary warnings. Defendants were or

26

should have been in possession of evidence demonstrating that their product created a high risk
of unreasonable, dangerous side effects, including but not limited to strokes, pulmonary emboli,
blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health
problems. Nonetheless, Defendants continued to market Ortho Evra by providing false and
misleading information with regard to its safety and efficacy.

183.    Plaintiffs and their doctors justifiably relied to their detriment upon Defendants'
positive misrepresentations concerning Ortho Evra.

184.    As a result of Defendants' conduct, Plaintiffs have sustained injuries as described
above. Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an
amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them , as set
forth herein below.

## SIXTH CAUSE OF ACTION
### *Fraud*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

185.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of
this Complaint as though fully set forth in this paragraph.

186.    ORTHO-MCNEIL and MCKESSON, having undertaken to prepare, design,
research, develop, manufacture, inspect, label, market, promote and sell Ortho Evra, owed and
continue to owe a duty to provide accurate and complete information regarding their product.

187.    Defendant deceptively sought to create the image and impression that the use of
Ortho Evra was just as safe as the oral contraceptives already on the market, and had no
unacceptable side effects, by intentionally distributing false information to Plaintiffs, the general
public, healthcare professionals and the FDA.

188.    On information and belief, Plaintiffs aver that the Defendants intentionally
concealed, misstated, downplayed, suppressed, and ignored test results that were unfavorable to
the Defendants as well as the results that revealed that Ortho Evra was not safe in the prevention
of pregnancy. Defendants deceived potential users and prescribers of the patch by disseminating
only allegedly positive information while concealing, misstating and downplaying the known

27

FIRST AMENDED COMPLAINT FOR DAMAGES

adverse and serious health effects. Defendants falsely and deceptively kept relevant information from potential Ortho Evra users and minimized safety concerns.

189.    These representations were made with the purpose of deceiving and defrauding the public, the FDA and the Plaintiffs in order to gain their confidence and falsely ensure the quality and fitness of Ortho Evra.

190.    In representations made to Plaintiffs, physicians and the public in general, Defendants' fraudulently concealed and intentionally omitted information included, but not limited to the following:

        A.      That Ortho Evra was not as safe as other forms of contraception;

        B.      That the amount of estrogen Ortho Evra users are exposed to is much higher than the levels that oral contraceptive users are exposed to;

        C.      The risk of adverse effects is more likely with Ortho Evra use because of the higher levels of estrogen that the user is exposed to;

        D.      That even after concerns about serious adverse effects were known, Ortho Evra was not adequately tested.

191.    Defendants were or should have been in possession of evidence demonstrating that their product caused serious side effects. Nevertheless, they continued to market Ortho Evra and represent falsely in their documents that Ortho Evra was safe and did not present any health risks above those associate with the oral contraceptives on the market.

192.    Defendants knew or should have known that the public, including the Plaintiffs would rely on the information that was being distributed.

193.    Plaintiffs did in fact rely on and believe Defendants' representations to be true and relied upon the representations, and were induced to purchase and use Ortho Evra. Plaintiffs did not discover the true facts with respect to the dangerous and serious side effects or the false representations that were made by Defendants, nor could the Plaintiffs have discovered the true facts with reasonable diligence.

194.    Had the Plaintiffs known of the true facts with respect to the dangerous and serious health risks of Ortho Evra, Plaintiffs would not have purchased or used Ortho Evra nor

28

would they have relied on Defendants' false representations.

195.  Defendants concealment and omissions of material facts concerning the safety of Ortho Evra was made purposefully, wilfully, wantonly and/or recklessly, to mislead Plaintiffs, and their physicians into continued use and/or dispensing of Ortho Evra.

196.  Plaintiffs are entitled to punitive damages because the failure of the Defendants to warn was reckless and without regard for the public's safety and welfare. Defendants misled both the medical community and the general public, including the Plaintiffs, through false representations about the safety of Ortho Evra.

197.  The Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

198.  Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

29

FIRST AMENDED COMPLAINT FOR DAMAGES

1
2
3
4
5

**PRAYER FOR RELIEF**

6    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

7    follows for:

8        1.    Costs of suit incurred herein;

9        2.    Special damages according to proof;

10       3.    General damages according to proof;

11       4.    Punitive or exemplary damages according to proof;

12       5.    Prejudgment interest on these losses;

13       6.    For such other and further relief as the Court deems just.

14   DATED: May 1, 2007                          LAW OFFICES OF SHAWN KHORRAMI
15
16                                               By:
17                                                  SHAWN KHORRAMI, ESQ.
                                                   Attorney for Plaintiffs
18
19
20
21
22
23
24
25
26
27
28
                                         30
     FIRST AMENDED COMPLAINT FOR DAMAGES

1

2

3

4                                    **DEMAND FOR JURY TRIAL**

5              Plaintiffs hereby demand a trial by jury in this action .

6      DATED: May 1, 2007                        LAW OFFICES OF SHAWN KHORRAMI

7

8                                          By:
                                              SHAWN KHORRAMI, ESQ.
9                                             Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              31
      **FIRST AMENDED COMPLAINT FOR DAMAGES**

CASE NUMBER: CGC-07 1636  CHOLE ALLEN et al VS. ORTHO-MCNEIL PHARMACEUTIC

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

DATE:    AUG-24-2007

TIME:    9:00AM

PLACE:   **Department 212**
         **400 McAllister Street**
         **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order
**without an appearance** at the case management conference if the case management
statement is filed, served and lodged in Department 212
twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each
defendant along with the complaint.  All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the Alternative Dispute Resolution Information
Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the
place of filing a written response to the complaint. You must file a written
response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

# Alternative Dispute Resolution (ADR) Information Package

# Alternatives to Trial

# Here are some other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 201.9(c))

Superior Court of California
County of San Francisco

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can be speedier.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can permit more participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR can be flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

# Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for civil matters; each program is described below:

1) Judicial arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-8913

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

## *Cost*

All parties must submit a $200 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 982-1600.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution Coordinator,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA 94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation** ☐     **Mediation Services of BASF** ☐     **Judicial Mediation**
☐ **Binding arbitration**                                                Judge _____
☐ **Non-binding judicial arbitration**                           Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| | | |
|---|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | Dated: _____ |

| | | |
|---|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | Dated: _____ |

| | | |
|---|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06             **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. *(Optional)*: | |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):**  ☐ **UNLIMITED CASE**  ☐ **LIMITED CASE** (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                Time:                Dept.:            Div.:            Room:

Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint  ☐ cross-complaint  *(describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

[   ]   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request   [   ] a jury trial   [   ] a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a.  [   ] The trial has been set for *(date):*
   b.  [   ] No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability).*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a.  [   ] days *(specify number):*
   b.  [   ] hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial   [   ] by the attorney or party listed in the caption   [   ] by the following
   a.  Attorney:
   b.  Firm:
   c.  Address:
   d.  Telephone number:
   e.  Fax number:
   f.  E-mail address:
   g.  Party represented:
   [   ] Additional representation is described in Attachment 8.

9. **Preference**
   [   ] This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
   a   Counsel   [   ] has   [   ] has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
   b.  [   ] All parties have agreed to a form of ADR. ADR will be completed by *(date):*
   c   [   ] The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d. The party or parties are willing to participate in *(check all that apply):*

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify):*

  e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

  f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

  g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

  ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

  a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

  b. Reservation of rights: ☐ Yes ☐ No

  c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy   ☐ Other *(specify):*

Status.

**14. Related cases, consolidation, and coordination**

  a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

    ☐ Additional cases are described in Attachment 14a.

  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
a. [ ] The party or parties have completed all discovery.
b. [ ] The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

Party                    Description                    Date

c. [ ] The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**
a. [ ] This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
b. [ ] This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**
[ ] The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**
a. [ ] The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**
Previous case management orders in this case are *(check one)*:    [ ] none    [ ] attached as Attachment 21.

22. Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.
Date:

_____ (TYPE OR PRINT NAME) ▸ _____ (SIGNATURE OF PARTY OR ATTORNEY)

_____ (TYPE OR PRINT NAME) ▸ _____ (SIGNATURE OF PARTY OR ATTORNEY)
[ ] Additional signatures are attached

CM-110 [Rev. January 1, 2007]    **CASE MANAGEMENT STATEMENT**    Page 4 of 4



# Superior Court of California
## County of San Francisco

# Judicial Mediation Program

### Introducing a new court alternative dispute resolution program that provides judicial mediation of complex civil cases

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David L. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable John J. Conway
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Curtis E. A. Karnow
The Honorable Patrick J. Mahoney

The Honorable Tomar Mason
The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Evans Quidachay
The Honorable A. James Robertson, II
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

12/15/06